UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE BANK OF NEW YORK MELLON,
LONDON BRANCH, as Indenture Trustee
under the Indenture dated as of April 30,
2007,

                Interpleader Plaintiff,

    - against -

CART 1, LTD., as Issuer; DEUTSCHE BANK
AG FRANKFURT, as Swap Counterparty; and
CRC CREDIT FUND, LTD.,

                Interpleader Defendants.

Case No. 18-cv-06093 (JPO)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEUTSCHE BANK
AG's MOTION TO DISMISS CRC CREDIT FUND, LTD.'s AMENDED CROSSCLAIMS
AND IN OPPOSITION TO CRC CREDIT FUND, LTD.'s MOTION TO DISMISS
<u>DEUTSCHE BANK AG's CROSSCLAIMS</u>**


CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Interpleader and Crossclaim
Defendant Deutsche Bank AG*

Of Counsel:

David G. Januszewski
Sheila C. Ramesh
Stephen C. Behymer

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.     THE ALLEGED 2010 AND 2011 BREACHES ARE TIME-BARRED ......................... 2

      A.     The 2010 and 2011 Allegations Are Time-Barred .................................... 2

      B.     The Statute of Limitations Should Not Be Equitably Tolled ..................... 4

II.     CRC FAILS TO ADEQUATELY ALLEGE A BREACH OF CONTRACT CLAIM RELATED TO THE 2011 SUBSTITUTION OF CONERGY LOANS ...................................................................................................... 5

      A.     Deutsche Bank's 2011 Substitution of Conergy Debt Satisfied the Applicable Reference Obligation Eligibility Criteria ................................ 5

      B.     CRC Fails to State a Claim by Alleging That Some Loans Were Made to Ineligible Borrowers ................................................................ 8

      C.     The Conergy Loans' Expiration Date Cannot Sustain a Breach of Contract Claim ............................................................................. 9

           1.     CRC Does Not Allege Any Damages Caused By the Extension ................ 9

           2.     The One Month Extension of the Restructured Conergy Loans Does Not Constitute a Material Breach ..................................... 10

III.     CRC DOES NOT, AND CANNOT, PLAUSIBLY ALLEGE A BREACH BASED ON THE DEBT-FOR-EQUITY EXCHANGE ................................................. 11

IV.     CRC DOES NOT PLAUSIBLY ALLEGE THAT DEUTSCHE BANK IMPERMISSIBLY ACCELERATED ITS WORKOUT OF CONERGY DEBT ................................................................................................... 12

V.     DEUTSCHE BANK WAS NOT REQUIRED TO REMOVE CONERGY LOANS ................................................................................................. 13

VI.     DEUTSCHE BANK STATES A CLAIM AGAINST CRC ........................................... 14

CONCLUSION .................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbas* v. *Dixon*,
  480 F.3d 636 (2d Cir. 2007)..................................................................................4-5

*Balance Point Divorce Funding, LLC* v. *Scrantom*,
  978 F. Supp. 2d 341 (S.D.N.Y. 2013)........................................................................14

*In re Bernard L. Madoff Investment Securities, LLC*,
  440 B.R. 282 (Bankr. S.D.N.Y. 2010) ...................................................................15n

*Cablevision Systems Corp.* v. *Town of East Hampton*,
  862 F. Supp. 875 (E.D.N.Y. 1994) .........................................................................11

*Craft EM CLO 2006-1, Ltd.* v. *Deutsche Bank AG*,
  2017 WL 3527488 (Sup. Ct. N.Y. Co. Aug. 14, 2017) .......................................3, 4

*Craft EM CLO 2006-1, Ltd.* v. *Deutsche Bank AG*,
  2018 WL 5084811 (Sup. Ct. N.Y. Co. Oct. 15, 2018) .......................................3, 4n

*Cronos Group Ltd.* v. *XComIP, LLC*,
  156 A.D.3d 54 (1st Dep't 2017) ...............................................................................7

*Deutsche Bank AG* v. *AMBAC Credit Products, LLC*,
  2006 WL 1867497 (S.D.N.Y. July 6, 2006) ...........................................................9n

*Equinox Gallery Limited* v. *Dorfman*,
  306 F. Supp. 3d 560 (S.D.N.Y. 2018)........................................................................4

*Hahn Automotive Warehouse, Inc.* v. *American Zurich Insurance Co.*,
  18 N.Y.3d 765 (2012) ............................................................................................2-3

*Hildene Capital Mgt., LLC* v. *Bank of New York Mellon*,
  2015 WL 67544 (Sup. Ct. N.Y. Co. Jan. 5, 2015)..................................................15

*Internet Law Library, Inc.* v. *Southridge Capital Management*, *LLC*,
  2005 WL 3370542 (S.D.N.Y. Dec. 12, 2005) ........................................................11

*John J. Kassner & Co.* v. *City of New York*,
  46 N.Y.2d 544 (1979) ...............................................................................................3

*Krys* v. *Pigott*,
  749 F.3d 117 (2d Cir. 2014)................................................................................9, 12

Page(s)

*LaSalle Bank N.A.* v. *Nomura Asset Capital Corp.*,
    424 F.3d 195 (2d Cir. 2005)..............................................................................8n

*In re Lipper Holdings, LLC*,
    1 A.D.3d 170 (1st Dep't 2003) ...............................................................7, 8n

*Mariah Re Ltd.* v. *American Family Mutual Insurance Co.*,
    52 F. Supp. 3d 601 (S.D.N.Y. Sept. 30, 2014) ....................................10

*Natale* v. *Beth Israel Medical Center*,
    2014 WL 5374349 (S.D.N.Y. Oct. 9, 2014) ......................................15n

*NEM Re Receivables, LLC* v. *Fortress Re, Inc.*,
    187 F. Supp. 3d 390 (S.D.N.Y. 2016)...................................................4

*NSI International, Inc.* v. *Mustafa*,
    2014 WL 12539347 (E.D.N.Y. Feb. 25, 2014)..................................11

*Platek* v. *Town of Hamburg*,
    24 N.Y.3d 688 (2015) ...........................................................................9n

*Rex Medical L.P.* v. *Angiotech Pharmaceuticals (US), Inc.*,
    754 F. Supp. 2d 616 (S.D.N.Y. 2010)................................................7-8

*T & N PLC* v. *Fred S. James & Co.*,
    29 F.3d 57 (2d Cir. 1994)........................................................................3

*UMG Recordings, Inc.* v. *Escape Media Group*,
    37 Misc. 3d 208 (2012)..........................................................................15

*Wells Fargo Bank, N.A.* v. *ADF Operating Corp.*,
    50 A.D.3d 280 (1st Dep't 2008) ...........................................................15

*White Plains Coat & Apron Co., Inc.* v. *Cintas Corp.*,
    8 N.Y.3D 422 (2007) ............................................................................14

**Rules**

CPLR § 213(2).................................................................................................2

Interpleader and Crossclaim Defendant Deutsche Bank AG, herein named Deutsche Bank AG Frankfurt, respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss the Amended Crossclaims of CRC Credit Fund, Ltd. and in opposition to CRC's Motion to Dismiss the Crossclaims of Deutsche Bank ("CRC Br.").

## PRELIMINARY STATEMENT

In its papers, CRC paints a dramatic picture of Deutsche Bank "rampantly violat[ing]" the terms of the credit default swap by sneaking ineligible debt into the Swap's Reference Portfolio.[1]  This false depiction is nothing more than a transparent attempt to conceal CRC's inability to plausibly allege any wrongdoing by Deutsche Bank.

Indeed, the underlying chronology is straightforward and undisputed.  In April 2007, CRC purchased notes backed by the Swap.  In exchange for making periodic coupon payments, Deutsche Bank received credit protection for qualifying debt placed in the Swap's Reference Portfolio.  In 2007, Deutsche Bank placed Conergy debt in the Reference Portfolio.  CRC does not dispute that this Conergy debt was eligible for inclusion.  Deutsche Bank, therefore, received credit protection on the Conergy debt for the full term of the Swap and retained the right to replace the original Conergy debt with new qualifying Conergy debt.  In 2010, according to CRC's own allegations, Conergy faced financial problems.  In response, Deutsche Bank—and Conergy's numerous other creditors—agreed to restructure the Conergy debt in order to reduce Conergy's outstanding debt and avoid an impending default.  In compliance with the terms of the Swap, Deutsche Bank substituted into the Reference Portfolio the restructured Conergy debt for the original Conergy debt.  Had Deutsche Bank done nothing, Conergy would have defaulted on

---

[1] Unless otherwise defined herein, defined terms have the meaning set forth in Deutsche Bank's Memorandum of Law in Support of its Motion to Dismiss the Amended Crossclaims of CRC Credit Fund, Ltd. ("DB Br.," ECF No. 45.)

its debt, and Deutsche Bank would have been entitled to protection payments under the Swap. Conergy ultimately filed for insolvency in 2013.

Now, in an effort to avoid paying Deutsche Bank what it is owed, CRC has scoured the governing documents to manufacture these claims.  It is thus unsurprising that they amount to nothing more than baseless allegations, which have caused the Trustee to breach the governing documents by failing to make credit protection payments to Deutsche Bank.  Further, four of CRC's five theories of breach are barred by New York's six-year statute of limitations, including those concerning: (i) the eligibility criteria; (ii) the eligibility of the borrowing entity; (iii) the extension of the Conergy loans' maturity date; and (iv) the debt-for-equity exchange.  For these reasons, and those discussed below and in Deutsche Bank's opening brief, CRC's Crossclaims should be dismissed and CRC's motion to dismiss Deutsche Bank's crossclaims should be denied.  The Trustee should be ordered to distribute the interpleaded funds to Deutsche Bank.

## **ARGUMENT**

## I.     **THE ALLEGED 2010 AND 2011 BREACHES ARE TIME-BARRED**

### A.     The 2010 and 2011 Allegations Are Time-Barred

CRC argues that its breach of contract claims are not barred by New York's six-year statute of limitations (*see* CPLR § 213(2)), suggesting that they accrued "when DBAG demanded insurance payments for the loans at issue" in 2018.  (CRC Br. at 13.)  CRC relies on an insurance case in which the "claim accrue[d] when the insured 'acquired legal right to demand payment.'" (*Id.* (quoting *Hahn Automotive Warehouse, Inc.* v. *American Zurich Insurance Co.*, 18 N.Y.3d 765, 771 (2012).)  CRC argues that Deutsche Bank did not acquire such a right until it caused "a third-party accountant to deliver an Accountant Certification" in 2018.  (*Id.* at 14.)  CRC attempts to muddy the waters by conflating its breach of contract claims, premised on alleged

breaches in 2010 and 2011, and Deutsche Bank's 2018 demand for payment, which is irrelevant to those claims.

Indeed, the insurance rule upon which CRC relies governs claims for monies owed that are brought by the "insured" (here, Deutsche Bank), *not* claims alleging that the "insured's" conduct otherwise breached the contract. *See Hahn*, 18 N.Y.3d at 767, 770-71 ("[W]here the claim is for payment of a sum of money allegedly owed . . . the cause of action accrues when the party making the claim possesses a legal right to demand payment." (internal quotation marks and citations omitted)); *John J. Kassner & Co.* v. *City of New York*, 46 N.Y.2d 544, 550 (1979) (claim for monies owed in which the alleged breach was defendant's failure to make payment when it became due, which is when the claim accrued). This theory thus fits squarely within the general rule that a cause of action for breach of contract accrues when a contract is breached. *See T & N PLC* v. *Fred S. James & Co.*, 29 F.3d 57, 59 (2d Cir. 1994). A claim for monies owed accrues when a party is entitled to demand payment and the breaching party fails to pay. CRC's damages claims based on alleged breaches that occurred in 2010 and 2011, however, are not conditioned upon such a demand and, therefore, accrued in 2010 and 2011. *See id.*

That CRC's 2010 and 2011 claims accrued independent of Deutsche Bank's demand for payment of the credit protection is illustrated by the *Craft EM CLO 2006-1, Ltd.* v. *Deutsche Bank AG* cases (collectively, "*CRAFT*"), on which CRC relies, which involved facts similar to those at issue here. (*See* CRC Br. at 13 (citing *CRAFT I*, 2017 WL 3527488, at *5 (Sup. Ct. N.Y. Co. Aug. 14, 2017) and *CRAFT II*, 2018 WL 5084811, at *1 (Sup. Ct. N.Y. Co. Oct. 15, 2018).) The *CRAFT* plaintiffs alleged that Deutsche Bank, in connection with a credit default swap, breached "its obligation . . . to meet specified criteria in the Reference Obligations" and "to comply with the independent accountant certification requirement." *CRAFT I* at *2. The

*CRAFT I* court dismissed as untimely the claims relating to noncompliance with the Reference Obligation criteria despite Deutsche Bank's obligation to obtain an accountant certification. *Id.* at *3-4.[2]

      B.    <u>The Statute of Limitations Should Not Be Equitably Tolled</u>

In a footnote, CRC half-heartedly argues that equity requires tolling the limitations period. (CRC Br. at 14 n.6). This is incorrect. Under New York law, "[t]he doctrine of equitable tolling . . . [is] reserved for rare and exceptional circumstances." *NEM Re Receivables, LLC* v. *Fortress Re, Inc.*, 187 F. Supp. 3d 390, 398 (S.D.N.Y. 2016) (internal quotation marks and citation omitted). "[A] plaintiff must establish that it was the defendants' subsequent actions—separate from the ones for which they sue—that kept it from bringing suit." *Equinox Gallery Limited* v. *Dorfman*, 306 F. Supp. 3d 560, 575 (S.D.N.Y. 2018) (internal quotation marks and citation omitted). Here, CRC does not allege that any post-2010 and 2011 acts by Deutsche Bank concealed those breaches. (*See* CRC Br. at 14 n.6.) Rather, CRC argues that Deutsche Bank's purported misrepresentations in 2007 marketing materials somehow concealed breaches that occurred years later. (*Id.*) This cannot sustain CRC's request for equitable tolling.

CRC also fails to satisfy its burden of demonstrating that due diligence would not have uncovered the alleged breaches within the limitations period. *Abbas* v. *Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) ("Due diligence . . . is an essential element of equitable relief." (internal quotation marks and citation omitted)). CRC argues that the claims were concealed because (i) the deal was "blind," and (ii) in 2007, Deutsche Bank "fraudulently promised" that the Reference Portfo-

---

[2] CRC's reliance on *CRAFT II*, which held certain claims timely, is misplaced. In *CRAFT II*, the court found that the plaintiff alleged a timely breach of contract claim where defendant failed to obtain an accountant certification as required by the terms of an agreement between the parties. 2018 WL 5084811, at *1. Here, CRC does not adequately allege a violation of any contract based on Deutsche Bank's 2018 accountant verification. *See, infra, section II*. Instead, it alleges breaches that occurred in 2010 and 2011, well outside the applicable statute of limitations.

lio would contain debt from "borrowers with at least an iB- credit rating, investors would not be responsible for losses associated with restructured entities with low credit ratings, and restructuring would not be a Credit Event." (CRC Br. at 14 n.6.) Both of these facts, however, were knowable and known to CRC during the limitations period. For example, CRC acknowledges that "[i]n a September 6, 2013 phone call, DBAG told CRC that the defaulting entity was a German manufacturer of solar panels." (CRC Compl. at 18 n.42.) CRC then cites to a July 5, 2013 article in Reuters from which CRC was able to determine that the defaulting entity was Conergy. (*Id.*) These concessions negate any effects of the "blind" nature of the deal and provide notice of Conergy's financial troubles. CRC also admits knowledge of Conergy's financial difficulties and its 2010 restructuring when it references (1) a 2010 Reuter's article concerning Conergy's "further challenges," and (2) Conergy's 2010, 2011, and 2012 annual reports, which detail its debt restructuring and Deutsche Bank's participation in the debt-for-equity exchange. (*Id.* at 19 n.44 & ¶¶ 48-54.)[3] CRC fails to offer any explanation for not timely filing suit despite acquiring this knowledge by 2013. *See Abbas*, 480 F.3d at 642.

## II.    CRC FAILS TO ADEQUATELY ALLEGE A BREACH OF CONTRACT CLAIM RELATED TO THE 2011 SUBSTITUTION OF CONERGY LOANS

### A.    Deutsche Bank's 2011 Substitution of Conergy Debt Satisfied the Applicable Reference Obligation Eligibility Criteria

CRC's argument that Deutsche Bank breached the Confirmation because the restructured Conergy debt did not satisfy Reference Obligation Eligibility Criteria (a) is incorrect because, as a Substitution, the debt was not required to satisfy criteria (a). (*See* CRC Br. at 17; Confirmation, Sch. C.) Despite its best efforts to muddle the plain language of the contract, CRC cannot avoid the ordinary meaning of clause (x)(1) of the Confirmation's Schedule D, which states:

---

[3] CRC also based its allegations concerning Deutsche Bank's agreement to extend the cut-off date on Conergy's 2011 and 2012 annual reports. (*Id.* ¶¶ 53-54.)

> If a Reference Obligation (the "Original Reference Obligation") is partially or fully prepaid or cancelled (as such terms are commonly used), then [Deutsche Bank] may elect to maintain the unpaid or uncancelled portion of such Reference Obligation in the Reference Portfolio and ***substitute another obligation of the applicable Reference Entity that satisfies the Reference Obligation Eligibility Criteria other than clauses (a) or (c) thereof*** (the "Substitute Reference Obligation") for the prepaid or cancelled portion of such Reference Obligation. . . .

(Confirmation, Sch. D § (x)(1) (emphasis added).)  The plain meaning of this clause is unambiguous:  Deutsche Bank may elect to substitute another obligation of the applicable Reference Entity as long as it satisfies the Reference Obligation Eligibility Criteria other than (a) or (c).

The reason a Substitution need not comply with criteria (a), which imposes a minimum credit rating on debt added to the Reference Portfolio, is revealed when one considers the context in which Deutsche Bank substituted the restructured Conergy debt for the original Conergy debt. Deutsche Bank agreed to restructure Conergy's debt in order to avoid Conergy's default on debt that was already in the Reference Portfolio.  Had Deutsche Bank not agreed to restructure Conergy's debt, Conergy faced an imminent bankruptcy which would have resulted in a Credit Event and thus Deutsche Bank collecting on the protection.  Of course, in this situation, the Reference Entity (*i.e.,* Conergy) no longer met the minimum credit rating requirement.  This requirement, therefore, fell away by way of clause (x)(1) in order to allow Deutsche Bank to take the steps necessary to stave off Conergy's imminent default and bankruptcy.  This provision benefitted the CART 1 noteholders, including CRC.  Contrary to CRC's suggestion (CRC Br. at 3), Deutsche Bank did not—and could not—"add more of [a] bad borrower's" debt through a Substitution; it merely replaced debt that was already in the portfolio with restructured debt from that same borrower, and was limited to the amount already in the portfolio.

Ignoring the plain meaning of clause (x)(1), CRC argues that the Confirmation provides that each loan must satisfy all the criteria without exception.  (CRC Br. at 17-18.)  Such an inter-

pretation would render clause (x)(1) meaningless.[4]  *See Cronos Group Ltd.* v. *XComIP, LLC*, 156 A.D.3d 54, 61 (1st Dep't 2017) ("Where there is an inconsistency between a specific provision and a general provision of a contract, the specific provision controls." (citations omitted)).

CRC contorts the Confirmation's language to argue that clause (x) merely provides a mechanism to avoid compliance with Schedule D's Replenishment Conditions rather than excusing a loan from meeting all of Schedule C's Reference Obligation Eligibility Criteria.  In other words, CRC argues that when a Reference Obligation is added to the Reference Portfolio via a Substitution,[5] the obligation still needs to satisfy all of the criteria, including (a) and (c), and merely does not need to meet the Replenishment Conditions as long as it satisfies criteria (b), (d), and (e), but not (a) and (c).  (CRC Br. at 6, 18.)  This interpretation is absurd.  *See In re Lipper Holdings, LLC*, 1 A.D.3d 170, 171 (1st Dep't 2003) ("A contract should not be interpreted to produce a result that is absurd." (citations omitted)).  First, clause (x) affirmatively grants Deutsche Bank the power to "*substitute* another obligation of the applicable Reference Entity that satisfies the Reference Obligation Eligibility Criteria other than clauses (a) or (c)."  (Confirmation, Sch. D § (x)(1) (emphasis added).)  Had the parties intended CRC's interpretation, clause (x) would simply have said that the Replenishment Conditions are inapplicable to Substitutions (because all criteria are met).  But the parties did not so intend.  Second, if Substitutions must satisfy all Reference Obligation Eligibility Criteria—as CRC argues—then there would be no need to clarify what happens when Substitutions do not satisfy criteria (a) and (c).  *See Rex*

---

[4] As the Substitution was not subject to Reference Obligation Eligibility Criteria (a), CRC's allegations that Deutsche Bank failed to satisfy the Credit Event Notice and Notice of Accountant Certification requirements because those notices stated that the Conergy debt met the applicable eligibility criteria fail to state a claim for breach of contract.  (*See* CRC Compl. ¶¶ 14-15, 65.)

[5] CRC argues that a Substitution is a type of Replenishment.  While CRC is incorrect, it is beside the point because clause (x)(1) provides that a Substitution need not satisfy criteria (a).

*Medical L.P.* v. *Angiotech Pharmaceuticals (US), Inc.*, 754 F. Supp. 2d 616, 624 (S.D.N.Y. 2010) ("Under New York . . . law, parties are not free to interpret a contract in a way that . . . makes any provision of the contract meaningless."(citations omitted)).[6]

CRC tries to justify its interpretation by arguing that the minimal credit rating is most needed "when a borrower proves it cannot pay its debts." (CRC Br. at 19.) CRC ignores the fact that for a Substitution to occur, the Reference Entity's debt must already be in the CART 1 Reference Portfolio such that it is already covered by the protection purchased by Deutsche Bank.[7]

> B.   CRC Fails to State a Claim by Alleging That Some Loans Were Made to Ineligible Borrowers

According to CRC, in 2007, Deutsche Bank added €14.247 million of Conergy debt to the Reference Portfolio under purported Reference Entity No. 6622834. (CRC Compl. ¶ 46.) Between 2007 and 2011, Deutsche Bank added additional Conergy debt to the Reference Portfolio. CRC does not specify from which Conergy Reference Entity/ies this debt originated. Then, in 2011, Deutsche Bank substituted out approximately €23 million of the Conergy debt for €23 million of the restructured Conergy debt. (CRC Compl. ¶ 53.) CRC alleges that most of the restructured Conergy debt came from the Conergy entity associated with purported Reference Entity No. 6622834, and that €2.922 million came from a Conergy entity associated with Reference Entity No. 6993794. CRC, therefore, argues that the €2.922 million was from an ineligible enti-

---

[6] CRC's reliance on *LaSalle Bank N.A.* v. *Nomura Asset Capital Corp.* is inapposite. 424 F.3d 195 (2d Cir. 2005). There, the Second Circuit evaluated two overlapping warranties and determined that, despite the overlap, they were not duplicative. *Id.* at 202, 206-07. Here, if CRC's interpretation is correct, then part of clause (x)(1) is rendered meaningless because it would be impossible for a Substitution not to satisfy Reference Obligation Eligibility Criteria (a).

[7] CRC suggests that Deutsche Bank's interpretation would allow Deutsche Bank to fill the Reference Portfolio with debt from a Reference Entity that is "new, larger, and even-risker" once that Reference Entity's rating drops below the minimum allowable rating. This is not true, however, as clause (x) explicitly provides that Deutsche Bank can only substitute in debt up to the amount already in the Reference Portfolio.

ty.  This, however, is nothing more than rank speculation.  *See Krys* v. *Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007)).  CRC never alleges whether the Conergy debt added to CART 1 between 2007 and 2011 came from purported Reference Entity No. 6622834 or 6993794 and, therefore, does not plead facts supporting an inference that €2.922 million came from an ineligible Reference Entity.

    C.    <u>The Conergy Loans' Expiration Date Cannot Sustain a Breach of Contract Claim</u>

        1.    *CRC Does Not Allege Any Damages Caused By the Extension*

CRC claims that the alleged extension of the Conergy debt constituted a breach that rendered the Conergy debt ineligible for credit protection and, as a result, would damage CRC if it were forced to make a protection payment.  (CRC Br. at 14-17.)  CRC is incorrect as the alleged one month extension did not render the obligations "ineligible."  The Confirmation's Schedules C and D set forth "clear criteria" for loan eligibility:  namely, Schedule C's "Reference Obligation Eligibility Criteria" and Schedule D's "Replenishment Conditions."  (*See* CRC Br. at 5-7, 9-10, 12, 17-20, 21 n.12; Confirmation, Sch. C, D.)  The cut-off date does not implicate these criteria/conditions and, therefore, does not affect the eligibility of the debt.[8]

Rather than alleging a breach of these eligibility criteria, CRC asserts that Deutsche Bank breached Schedule F's "Reference Portfolio Servicing Standards."  (CRC Compl. ¶¶ 37, 54; Confirmation, Sch. F.)  The Confirmation does not provide that a violation of Schedule F renders debt ineligible.  CRC all but acknowledges this reality.  (*See* CRC Br. at 21 n.12 (arguing, with

---

[8] The cases upon which CRC relies are inapposite because, in each, the contracts provided that if the specific provisions at issue were not met, then no payments were due.  This is not the case here.  *See Deutsche Bank AG* v. *AMBAC Credit Products, LLC*, 2006 WL 1867497, at *3 (S.D.N.Y. July 6, 2006) ("If a [Notice of Intended Physical Settlement] is not delivered within the 30-day window, the transaction terminates, and the buyer loses its ability to make any claim."); *Platek* v. *Town of Hamburg*, 24 N.Y.3d 688, 694 (2015) (insurance policy explicitly excluded coverage for "loss to the property" resulting from certain enumerated causes).

respect to a different part of the servicing standards, that a breach renders debt ineligible only because it purportedly results in a violation of the Reference Obligation Eligibility Criteria).)

Deutsche Bank's position is consistent with the rest of the Confirmation, which provides: "[i]f, subsequent to its inclusion in the Reference Portfolio, any purported Reference Obligation is determined not to comply with the Reference Obligation Eligibility Criteria or the Replenishment Conditions (determined as of the Relevant Date)," then Deutsche Bank is obligated to remove the Reference Obligation from the Reference Portfolio. (Confirmation, Sch. D § (y) at 3.) There is no equivalent requirement for breaches of the servicing standards.

CRC does not, and cannot, allege any other damages in connection with the loan extension. Nor does CRC refute that if Deutsche Bank had not agreed to the restructuring—in order to avoid running afoul of the cut-off restriction—the Conergy loans would have defaulted soon thereafter, entitling Deutsche Bank to the same credit protection. CRC does not even proffer a theory of how it might have made out better had Deutsche Bank not extended the Conergy loans past the cut-off date.[9] *See Mariah Re Ltd.* v. *American Family Mutual Insurance Co.*, 52 F. Supp. 3d 601, 611 (S.D.N.Y. Sept. 30, 2014) ("[F]actual allegations showing damages are essential: In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient . . . ." (internal quotation marks and citation omitted)).

2.    *The One Month Extension of the Restructured Conergy Loans Does Not Constitute a Material Breach*

CRC asks the Court to excuse it from pleading materiality because it purports to seek only damages. (CRC Br. at 15.) What CRC actually seeks is to prevent CART 1 from performing

---

[9] CRC states that the purpose of the cut-off date was to prevent Deutsche Bank "from restructuring impaired short-term loans into much riskier long-term loans to avoid taking losses." (CRC Br. at 14-15.) CRC entirely fails to suggest how the extension—which temporarily avoided Conergy's default—could have resulted in a riskier loan, much less one that could have resulted in losses beyond Conergy's then-imminent default.

on its contract.  (*See* Interpleader Compl. ¶ 7 ("CRC… asserts that Deutsche Bank . . . is therefore entitled to receive no protection payments . . . .  CRC has urged the Trustee to withhold from Deutsche Bank the protection payments . . . ."); *see also* CRC Compl. at 14-16 & Parts IV-V; CRC Br. at 15 n.9 (citing case law dealing with an insurer's ability to rescind a contract).)  As a result, New York law requires CRC to plead materiality.  *Cablevision Systems Corp.* v. *Town of East Hampton*, 862 F. Supp. 875, 885 (E.D.N.Y. 1994), *aff'd*, 57 F.3d 1062 (2d Cir. 1995); *Internet Law Library, Inc.* v. *Southridge Capital Management*, *LLC*, 2005 WL 3370542, at *6 (S.D.N.Y. Dec. 12, 2005).  CRC failed to do so:  the Conergy loans' alleged one month extension beyond the cut-off date could not have "defeat[ed] the purpose of the entire transaction." *NSI International, Inc.* v. *Mustafa*, 2014 WL 12539347, at *9 (E.D.N.Y. Feb. 25, 2014), *aff'd*, 613 Fed. Appx. 84 (2d Cir. 2015) (internal quotation marks and citation omitted).

## III.   CRC DOES NOT, AND CANNOT, PLAUSIBLY ALLEGE A BREACH BASED ON THE DEBT-FOR-EQUITY EXCHANGE

CRC argues that the "most-favored nations" clause prohibited DB London from independently participating in the debt-for-equity exchange with respect to the Conergy debt outside of CART 1 because DB Luxembourg participated in the debt restructuring option for Conergy debt inside CART 1.  (CRC Br. at 21-23.)  CRC is incorrect.

The "most-favored nations" clause provides that Deutsche Bank "shall not place [the interests of CART 1] in a less favorable position than its own interests or the interests of any other DBAG Group Entity *in relation to their respective other claims against the same Reference Obligor*."  (Confirmation, Sch. F. at 2 (emphasis added).)  CRC disregards the emphasized portion of this clause.  CRC has not alleged that Deutsche Bank placed its interests (or the interests of DB London) ahead of CART 1's interests "in relation to their respective other claims against the same Reference Obligor."  Rather, as the holder of restructured Conergy debt, CART 1 held

-11-

a more senior claim than DB London, as the holder of equity.  Deutsche Bank satisfied its obligation to "safeguard the interests of [CART 1] in the fullest performance of the Reference Obligations" by participating in the debt restructuring, which reduced Conergy's debt by 40 percent and gave Conergy the best chance to pay off its debt.  (Confirmation, Sch. F. at 2.)

Not only did Deutsche Bank comply with the terms of the Confirmation, but, as CRC recognizes, the Confirmation expressly allows "each party . . . where permitted" to "generally engage in any kind of commercial or investment banking or other business with, a Reference Entity . . . and may act with respect to such business in the same manner as each of them would if the relevant Transaction did not exist."  (Confirmation § 8(b)(ii).)  This clause applies because Deutsche Bank's decision to participate in the debt restructuring option rather than the debt-for-equity exchange was not prohibited.[10]

## IV.   CRC DOES NOT PLAUSIBLY ALLEGE THAT DEUTSCHE BANK IMPERMISSIBLY ACCELERATED ITS WORKOUT OF CONERGY DEBT

CRC's argument that Deutsche Bank improperly accelerated its workout of the Conergy debt, which was ongoing for nearly five years after Conergy filed for insolvency on July 5, 2013, does not "raise a right to relief above the speculative level."  (*See* CRC Compl. at 18 n.42 & ¶¶ 57-61); *Krys*, 749 F.3d at 129 (quoting *Twombly*, 550 U.S. at 555).)  The Confirmation provides that the "work-out process" on defaulted Reference Obligations concludes when Deutsche Bank "determine[s] in accordance with [Deutsche Bank's] servicing practices and this Confirmation . . . that such Reference Obligation shall be written-off."  (Confirmation at 22.)  CRC does not dis-

---

[10] CRC argues that Deutsche Bank's interpretation allows it to obtain "credit protection for any loans that caught its eye."  To the contrary, Deutsche Bank simply states that it is not required to remove debt from the Reference Portfolio to avoid CART 1 paying protection payments, particularly where it is restructuring debt already in the Reference Portfolio in order to avoid a default.

pute that Deutsche Bank wrote-off the Conergy debt in March 2018, (CRC Compl. ¶ 12), thus concluding the work-out process.

CRC's sole argument in opposition is that "more recoveries were likely because DBAG received a €21,000 recovery in December 2017" on an alleged approximately €23 *million* debt.[11] (CRC. Br. at 1, 23.)  As set forth in Deutsche Bank's opening brief, however, CRC offers no factual allegations suggesting that additional payments to creditors are likely, let alone any nonnegligible payments, and only speculates that "further payments *could* be coming."  (CRC Compl. ¶ 12.)  Moreover, pursuant to Deutsche Bank's internal servicing standards, Deutsche Bank need only determine that the debt, or a portion thereof, is *probably* uncollectable to write off that debt.  (CRC. Compl. ¶ 60; Ramesh Decl. Ex. 1 at 4.)  The Confirmation itself contemplates that Deutsche Bank may receive additional payments after a debt has been written off and provides a mechanism by which Deutsche Bank will make "adjustment payments" to CART 1 if and when additional amounts are recovered.  (Confirmation § 8(g).)  After a five-year long process, Deutsche Bank received a €21,000 payment on its alleged €23 million debt and then wrote-off the uncollected portion of the debt.  This small payment suggests that the remaining debt was likely to be uncollectable.  That is sufficient.

## V.   DEUTSCHE BANK WAS NOT REQUIRED TO REMOVE CONERGY LOANS

CRC argues that "DBAG had to remove a Reference Obligation from the Reference Portfolio if it *was found to violate the Confirmation.*"  (CRC Br. at 24.)  Again, CRC misstates the terms of the Confirmation.  The Confirmation provides that:

---

[11] CRC argues that in addition to the €21,000 payment, it alleged that Deutsche Bank recovered about €2.3 million during Conergy's bankruptcy process.  (CRC Br. at 23.)  CRC's Amended Crossclaims do not, in fact, contain any such allegation.  Regardless, even if CRC did allege that Deutsche Bank received a total of €2.3 million during the course of the five-year long bankruptcy process, that does not plausibly support an inference that additional payments were anything more than possible.

> If, subsequent to its inclusion in the Reference Portfolio, any purported
> Reference Obligation is determined not to comply with the Reference Ob-
> ligation Eligibility Criteria or the Replenishment Conditions (determined
> as of the Relevant Date), . . . [Deutsche Bank] will remove the relevant
> Reference Obligation . . . from the Reference Portfolio. . . .

(Confirmation, Sch. D. § (y) at 3.)  As this clause demonstrates, a Reference Obligation need on-
ly be removed from the Reference Portfolio if it is determined not to satisfy the applicable Refer-
ence Obligation Eligibility Criteria or Replenishment Conditions at the time it was added to the
Reference Portfolio.  The Reference Obligation does not need to be removed for *any other* viola-
tion.  Therefore, of the alleged breaches, only CRC's allegations concerning non-compliance
with Reference Obligation Eligibility Criteria (a), if true, would require Deutsche Bank to re-
move the Conergy debt from the Reference Portfolio.  As discussed, *supra*, section II.A, howev-
er, the substituted Conergy debt was not subject to criteria (a).

## VI.    DEUTSCHE BANK STATES A CLAIM AGAINST CRC

CRC attempts to evade liability for its tortious interference with Deutsche Bank's con-
tractual right to credit protection by raising the economic interest defense.  This affirmative de-
fense cannot be raised in CRC's pre-answer motion because facts necessary to establish the de-
fense are not "evident on the face of" Deutsche Bank's crossclaim.  *Balance Point Divorce
Funding, LLC* v. *Scrantom*, 978 F. Supp. 2d 341, 350 (S.D.N.Y. 2013) ("In general, affirmative
defenses require consideration of facts outside of the complaint and are inappropriate to consider
on a motion to dismiss.").

The economic interest defense to a contract interference claim requires the defendant to
show "it acted to protect its own legal or financial stake in the breaching party's business."
*White Plains Coat & Apron Co., Inc.* v. *Cintas Corp.*, 8 N.Y.3D 422, 426 (2007).  Though CRC
argues that the economic interest defense shields it from liability because "DBAG's pleadings
show CRC's economic interests in the *contracts*," (CRC Br. at 25 (emphasis added)), CRC must

-14-

have an economic interest in the *breaching party's* business for the defense to apply. *See UMG Recordings, Inc.* v. *Escape Media Group*, 37 Misc. 3d 208, 224 (2012) ("[A] party acting in its own direct interest, rather than to protect its stake in the breaching party, may not raise the economic interest defense." (citation omitted)); *see also Wells Fargo Bank, N.A.* v. *ADF Operating Corp.*, 50 A.D.3d 280, 281 (1st Dep't 2008) (finding the economic interest defense inapplicable where "defendants were not acting to protect their financial interests [in the breaching party]" but instead sought "to profit themselves to the detriment of [the breaching party]").

CRC has no legal or financial stake in the business of the breaching party—the Bank of New York Mellon, in its capacity as Indenture Trustee. *See Hildene Capital Mgt., LLC* v. *Bank of New York Mellon*, 2015 WL 67544 (Sup. Ct. N.Y. Co. Jan. 5, 2015) (dismissing defendant's argument that its interest in its own business was sufficient to justify applying the economic interest defense, where defendant induced the breach of an indenture by Bank of New York Mellon, the indenture trustee).[12] Thus, the economic interest defense cannot shield CRC from liability for contract interference.

## CONCLUSION

For the foregoing reasons, CRC's Amended Crossclaims should be dismissed for failure to state a claim and its Motion to Dismiss Deutsche Bank's Crossclaims should be denied. As a result, Interpleader Plaintiff BONY should be ordered to distribute the interpleaded funds to Deutsche Bank.

---

[12] In both cases upon which CRC relies in contending that Deutsche Bank's contract interference claim should be dismissed, the defendant justifiably sought to protect its economic interest in the *breaching entity's* business. *See Natale* v. *Beth Israel Medical Center*, 2014 WL 5374349, at *2 (S.D.N.Y. Oct. 9, 2014); *In re Bernard L. Madoff Investment Securities, LLC*, 440 B.R. 282, 293–94 (Bankr. S.D.N.Y. 2010). These cases are inapposite. However "strong" an economic interest CRC has in the Indenture, CRC has no interest in the breaching entity: the Bank of New York Mellon, as Trustee.

Dated:    December 7, 2018
          New York, New York

                                    CAHILL GORDON & REINDEL LLP

                                    By:   /s/ Sheila C. Ramesh
                                          David G. Januszewski
                                          Sheila C. Ramesh
                                          Stephen C. Behymer
                                          80 Pine Street
                                          New York, New York 10005
                                          (212) 701-3000

                                    *Attorneys for Interpleader and Crossclaim Defend-
                                    ant Deutsche Bank AG*