UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE BANK OF NEW YORK MELLON,
LONDON BRANCH, as Indenture Trustee
under the Indenture dated as of April 30,
2007,

                Interpleader Plaintiff,

      - against -

CART 1, LTD., as Issuer; DEUTSCHE BANK
AG FRANKFURT, as Swap Counterparty; and
CRC CREDIT FUND, LTD.,

             Interpleader Defendants.

Case No. 18-cv-06093 (JPO)

**MEMORANDUM OF LAW IN SUPPORT OF DEUTSCHE BANK AG's MOTION FOR RECONSIDERATION**

CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Interpleader and Crossclaim
Defendant Deutsche Bank AG*

Of Counsel:

David G. Januszewski

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .......................................................................................................................... 3

I.   THE REFERENCE OBLIGATION ELIGIBILITY CRITERIA DID NOT
     INCORPORATE THE SCHEDULE F SERVICING STANDARDS ............................. 4

     A.   Reference Obligation Eligibility Criterion (e) Did Not Incorporate
          the Credit and Collection Policies............................................................................5

     B.   The Accountant Certification Confirms that the Reference
          Obligation Eligibility Criteria Did Not Incorporate the Servicing
          Standards..................................................................................................................7

     C.   Incorporation of the Servicing Standards into the Reference
          Obligation Eligibility Criteria Leads to Absurd Results that Could
          Not Have Been Intended By the Parties. ..................................................................9

II.  DEUTSCHE BANK DID NOT BREACH THE SCHEDULE F SERVICING
     STANDARDS BY EXTENDING THE CONERGY LOANS' MATURITY
     TO FIVE WEEKS BEYOND CART 1'S SCHEDULED TERMINATION
     DATE..................................................................................................................... 10

CONCLUSION..................................................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*133 Plus 24 Sanford Ave. Realty Corp.* v. *Xiu Lan Ni,*
   7 N.Y.S.3d 819 (2d Dep't 2015) ............................................................................................10

*American International Group, Inc.* v. *Bank of America Corp.,*
   712 F.3d 775 (2d Cir. 2013) .................................................................................................5n

*In re Bernard L Madoff Investment Securities LLC,*
   2014 WL 5106909 (S.D.N.Y. Oct. 10, 2014) .........................................................................8

*DiFolco* v. *MSNBC Cable L.L.C.,*
   622 F.3d 104, 111 (2d Cir. 2010) .........................................................................................7n

*Duane Reade, Inc.* v. *Cardtronics, LP,*
   54 A.D.3d 137 (1st Dep't 2008) .......................................................................................5, 5n

*In re Lipper Holdings, LLC,*
   1 A.D.3d 170 (1st Dep't 2003) ..............................................................................................9

*Innophos, Inc.* v. *Rhodia, S.A.,*
   882 N.E.2d 389 (N.Y. 2008) .................................................................................................7

*Shrader v. CSX Transportation, Inc.,*
   70 F.3d 255 (2d Cir. 1995) ...................................................................................................3

*Sira* v. *Morton,*
   380 F.3d 57, 67 (2d Cir. 2008) .............................................................................................7n

**Rules**

Civil Local Rule 6.3 ......................................................................................................................7n

Interpleader and Crossclaim Defendant Deutsche Bank AG, named in this action as Deutsche Bank AG Frankfurt ("Deutsche Bank"), respectfully submits this Memorandum of Law in support of its Motion for Reconsideration of the Court's September 9, 2019 Opinion and Order (the "Opinion").[1]

## PRELIMINARY STATEMENT

After profiting for over a decade from an investment in credit defaults swaps serviced by Deutsche Bank, hedge fund CRC Credit Fund, Ltd. ("CRC") sought to find something, *anything,* that could be interpreted as a breach of contract in order to receive more than it bargained for. As the swaps were about to terminate, CRC opportunistically raised purported grievances regarding Deutsche Bank's acts as servicer, leading BONY Mellon to interplead the disputed funds. CRC then brought meritless claims against Deutsche Bank, and in so doing threw a myriad of theories of breach against the wall to see what might stick.  This Court found that CRC's *fifth* and final theory of Deutsche Bank's breach of the relevant contract—which CRC advanced for the first time only after amending its original Crossclaims—precludes Deutsche Bank from collecting on the €21 million protection payment it is owed.  Although motions for reconsideration are disfavored, reconsideration is appropriate here because the Court overlooked portions of a contract, the Confirmation, which led to an erroneous decision.  This overlooked language in the Confirmation unambiguously provided that the Reference Obligation Eligibility Criteria set forth in Schedule C (the "Criteria") did not incorporate the Servicing Standards set forth in Schedule F.  Moreover, the Court also overlooked conflicting provisions in the Schedule F Servicing Standards that demonstrate that Deutsche Bank did not breach these standards.

---

[1]     Unless otherwise defined herein, defined terms have the meaning set forth in Deutsche Bank's Memorandum of Law in Support of its Motion to Dismiss the Amended Crossclaims of CRC Credit Fund, Ltd., ECF No. 45 (Oct. 30, 2018) ("Deutsche Bank's Motion to Dismiss"), and the Court's September 9, 2019 Opinion and Order, ECF No. 57.

The Court found, correctly, that a valid Accountant Certification is a condition precedent to Deutsche Bank receiving default protection payments for any defaulted Reference Obligation. Opinion at 13.  But the Court incorrectly followed a convoluted "incorporation chain" offered by CRC.  As a result, the Court held that Schedule C, which sets forth the Reference Obligation Eligibility Criteria, incorporated the Servicing Standards set forth in Schedule F.  Following CRC's "chain of cross-references," the Court held that: Reference Obligation Eligibility Criterion (e) incorporated the "Credit and Collection Policies"; the "Credit and Collection Policies" incorporated the "Servicing Standards"; and "Servicing Standards" was defined to mean the servicing principles set forth in Schedule F.  *Id.* at 14-15.  Finally, the Court found that Deutsche Bank failed to dispute that it breached the Schedule F servicing principles and, in light of this concession and the incorporation chain, concluded that the Accountant Certification was erroneous and that Deutsche Bank is therefore not entitled to any protection payments for the Conergy loans. *Id.* at 14-16.

In following the incorporation chain set forth above, the Court overlooked provisions of the Criteria that demonstrate that the Servicing Standards were not incorporated into the Criteria. First, in Criterion (e), the clause preceding the reference to the Credit and Collection Policies— "as determined by"—indicates that the proceeding phrase merely modified adjacent clauses and Criterion (e) did not incorporate the Credit and Collection Policies.  Second, other provisions of the Confirmation confirm that the oblique reference in Criterion (e) to the Credit and Collection Policies was not an incorporation.  Schedule F, for example, unambiguously incorporated the Credit and Collection Policies, demonstrating that the parties knew how to incorporate the policies if that was their intention.  Also, the term "Reference Portfolio" contained the same language as Criterion (e) and incorporating the Credit and Collection Policies into that provision

would not make any sense.  <u>Third</u>, the Accountant Certification, which set forth the standards for evaluating whether a Reference Obligation satisfied all applicable Criteria, did not reference the Servicing Standards at all.  This demonstrates that the parties did not intend to incorporate these Standards into the Criteria.  <u>Finally,</u> incorporating the Servicing Standards into the Criteria generates absurd results, demonstrating that incorporation was incorrect.

Even if the Court correctly interpreted the disputed incorporation chain, reconsideration is still appropriate because the Court erred in holding that the Conergy loans were not made in compliance with the Servicing Standards.  The Schedule F Servicing Standards imposed conflicting obligations on Deutsche Bank.  On the one hand, with Conergy on the brink of bankruptcy, Schedule F obligated Deutsche Bank to "safeguard the interests of [CART 1] in the fullest performance of the Reference Obligations," including by avoiding Conergy's bankruptcy through restructuring in order to maximize recovery.  On the other, restructuring could not occur, and recovery could not be maximized, without extending the Conergy loans' maturity dates beyond the Scheduled Termination Date in violation of a different standard in Schedule F.  Deutsche Bank did not breach Schedule F by attempting to minimize potential losses due to Conergy's credit concerns and extending the maturity date of the Conery loans beyond the Scheduled Termination Date.  Because Deutsche Bank did not breach the Schedule F Servicing Standards, even if those standards were incorporated in the Reference Obligation Eligibility Criteria (they were not), the Conergy loans satisfied the Criteria and the Accountant Certification was valid.

## <u>ARGUMENT</u>

A motion for reconsideration is appropriate where "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader* v. *CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Here, reconsideration is appropriate for two simple and inde-

pendent reasons.  First, the Court overlooked language in the Confirmation that unambiguously demonstrates that the Reference Obligation Eligibility Criteria did not incorporate the Schedule F Servicing Standards.  Indeed, the Accountant Certification, which the Court did not review (yet held to be improper), makes clear that the parties did not intend for the Reference Obligation Eligibility Criteria to incorporate the Servicing Standards.  Furthermore, such an incorporation produces absurd results that could not have been intended by the contracting parties.  Second, Deutsche Bank did not breach the Servicing Standards by extending the maturity date of the Conergy loans and thus the Accountant Certification was not erroneous.  In holding that Deutsche Bank breached these Standards, the Court overlooked the conflicting obligations imposed by the Servicing Standards.  Reconsideration is warranted.

## I.   THE REFERENCE OBLIGATION ELIGIBILITY CRITERIA DID NOT INCORPORATE THE SCHEDULE F SERVICING STANDARDS

In denying Deutsche Bank's motion to dismiss CRC's Amended Crossclaims, the Court found that the viability of CRC's improper certification claim turns on whether the Accountant Certification complied with the Confirmation.  Opinion at 13.  The Confirmation mandated that before Deutsche Bank could seek a protection payment, KPMG or an independent accountant must have certified that defaulted Reference Obligations satisfied the Reference Obligation Eligibility Criteria set forth in the Confirmation's Schedule C.  *Id.*  But the Court erred in finding that these Criteria incorporated the Schedule F Servicing Standards.  Reference Obligation Eligibility Criterion (e) did not incorporate the Credit and Collection Policies and therefore the chain of cross-references that the Court followed is broken and the Reference Obligation Eligibility Criteria did not incorporate the Schedule F Servicing Standards.  This interpretation is confirmed by other provisions of the Confirmation and the Accountant Certification, which is evidence of how the parties interpreted the Confirmation and demonstrates that the Reference Obligation Eli-

-4-

gibility Criteria did not incorporate the Servicing Standards.  Furthermore, because incorporating

the Servicing Standards into the Criteria leads to absurd results, this interpretation cannot be cor-

rect.

A.      Reference Obligation Eligibility Criterion (e) Did Not Incorporate the Credit and
        Collection Policies.

The chain of cross-references that led the Court to find that the Servicing Standards were

incorporated into the Reference Obligation Eligibility Criteria began with Criterion (e), which

provided that a Reference Obligation:

> shall not be a bond but shall be a loan (including a syndicated loan), overdraft fa-
> cility, revolving credit facility, guarantee or letter of credit (or combination of the
> foregoing) to or for the account of a corporate entity, including a financial institu-
> tion and certain other entities or to or for the account of an individual, whose re-
> payment is primarily dependent upon the creditworthiness of a small or medium-
> sized enterprise, as determined by the relevant DBAG Group Entity in accordance
> with the Credit and Collection Policies.

Confirmation, Sch. C § (e).  The Court held that this provision incorporated the Credit and Col-

lection Policies into the Criterion (e) requirements.  Opinion at 14.  But this interpretation misin-

terprets the clause "as determined by the relevant DBAG Group Entity in accordance with the

Credit and Collection Policies."  The phrase "as determined by" is a modifying or qualifying

phrase, and indicates that Criterion (e)'s last clause merely modified the prior clause.  *See, e.g.*,

*Duane Reade, Inc.* v. *Cardtronics, LP*, 54 A.D.3d 137, 141 (1st Dep't 2008).[2]  The clause did not

---

[2]     Generally, modifying clauses are read to modify only the noun or phrase that immediately precede
the clause.  *Duane Reade, Inc.* v. *Cardtronics, LP*, 54 A.D.3d 137, 141 (1st Dep't 2008).  Here, the
modifying clause was set off by a comma, and therefore the clause may have applied to each item
listed in the language preceding it, rather than solely the last clause.  *See, e.g.*, *American Interna-
tional Group, Inc.* v. *Bank of America Corp.*, 712 F.3d 775, 781-82 (2d Cir. 2013).  But this distinc-
tion is irrelevant here.  Whether the clause applied to each prior clause of Criterion (e) does not in-
fluence the analysis regarding whether the clause incorporated the Credit and Collection Policies or
whether the cause merely modified one or more of the preceding clauses.  The language of the
clause demonstrates that "as determined by the relevant DBAG Group Entity in accordance with
the Credit and Collection Policies" modified the preceding clause(s) and did not incorporate the
Credit and Collection Policies.

incorporate the Credit and Collection Policies; it merely indicated that in determining the meaning of the clause prior ("whose repayment is primarily dependent upon the creditworthiness of a small or medium-sized enterprise"), the relevant DBAG Group Entity was required to follow the Credit and Collection Policies.

Furthermore, Deutsche Bank's interpretation is confirmed by other provisions of the Confirmation.  For example, in Schedule F, the Servicing Standards, the parties incorporated the Credit and Collection Policies.  Confirmation, Sch. F § General, ECF No. 49-1 at 61 ("[E]ach DB Servicer shall perform its duties in the course of servicing the Reference Obligations in compliance with the Credit and Collection Policies.").  This demonstrates that the parties knew how to incorporate the Credit and Collection Policies into a section or provision if they so intended.  If Criterion (e) was intended to incorporate the Credit and Collection policies, it would have been written like the language incorporating such policies in Schedule F.  Moreover, if incorporation of the Credit and Collection policies had been intended, there would be no point to the preceding text regarding the types of credit instruments eligible for inclusion in the Reference Portfolio (*i.e.*, certain types of loans but not bonds).

Examination of the purpose of Criterion (e) and other provisions of the Confirmation using the same language as Criterion (e) further confirms that the Criteria did not incorporate the Credit and Collection Policies.  Criterion (e) describes the types of credit instruments that were eligible for inclusion in the Reference Portfolio.  It has nothing to do with the conditions for servicing such obligations.  Confirmation, Sch. C § (e), ECF No. 49-1 at 45 (Reference Obligations must be loans and other types of credit instruments, but not bonds).  Criterion (e) is similar to the provision "Reference Portfolio" on page 7 of the Confirmation, which notes that the Reference Portfolio will consist of, *inter alia*, loans and other credit instruments "to or for the account of

corporate entities . . . and to or for the account of individuals, whose repayment is primarily de-

pendent upon the creditworthiness of small or medium-sized enterprises, as determined by the

relevant DBAG Group Entity in accordance with the Credit and Collection Policies."  Confirma-

tion, § Reference Portfolio, ECF No. 49-1 at 7.  Criterion (e) and the Reference Portfolio provi-

sion use similar language for a similar purpose and should be interpreted consistently.  Neither

provision incorporates the Credit and Collection Policies.  The reference to the Credit and Col-

lection Policies in each provision merely qualifies how Deutsche Bank should determine the

types of loans that are eligible for inclusion in the Reference Portfolio.

      B.    <u>The Accountant Certification Confirms that the Reference Obligation Eligibility</u>
              <u>Criteria Did Not Incorporate the Servicing Standards.</u>

The Reference Obligation Eligiblity Criteria unambiguously did not incorporate the Ser-

vicing Standards of Schedule F.  *Supra* Section I.A.  But to the extent the Reference Obligation

Eligibility Criterion (e) was ambiguous regarding incorporation, extrinsic evidence may be con-

sidered.  *Innophos, Inc.* v. *Rhodia, S.A.*, 882 N.E.2d 389, 392 (N.Y. 2008).  Here, the Accountant

Certification[3] detailed the methods followed by KPMG and demonstrated that the Criteria did not

---

[3]      Although consideration of affidavits on a motion for reconsideration is disfavored under Local Civil Rule 6.3, the Court has discretion to consider such affidavits.  Civil Local Rule 6.3 ("No af- fidavits shall be filed by any party *unless directed by the Court*." (emphasis added)).  Considera- tion of Deutsche Bank's affidavit attaching the Accountant Certification is warranted here con- sidering CRC's allegations that the Certification was falsified and the centrality of the Certifica- tion to the Court's holding that Deutsche Bank is not entitled to the credit protection payments for the defaulted Conergy loans.  Opinion at 6, 10-13.  As the Court acknowledged, "[t]he viability of CRC's improper certification claim turns on whether DB's Accountant Certification complies with the Confirmation."  *Id.* at 13.  In such circumstances, examination of the actual Certification is appropriate.  Furthermore, because the Certification is incorporated by reference in CRC's Amended Crossclaims, the Court may consider it on a motion to dismiss.  *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the com- plaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."); *Sira* v. *Morton*, 380 F.3d 57, 67 (2d Cir. 2008) ("[Plaintiff's] complaint ex- plicitly refers to and relies upon two of the documents at issue . . . [t]hese documents are thus in- corporated by reference into the complaint.").

incorporate the Servicing Standards.  *See* September 23, 2019 Declaration of David G. Ja-nuszewski Exhibit 1 ("Accountant Certification") at 2 ("In particular we (i) checked . . . that the defaulted Reference Obligations satisfied the Reference Obligation eligibility criteria as defined in Schedule C 'Reference Obligation Eligibility Criteria' of the Confirmation . . . .").  In the chart beginning on page 3, KPMG listed each clause of the Reference Obligation Eligibility Criteria, the procedures followed to determine whether each Reference Obligation satisfied the Criteria, and its factual findings.  Accountant Certification at 3-5 (listing "Agreed-upon Procedures" in the third column of the table).  As shown in the row for Criterion (e), for each defaulted Refer-ence Obligation, KPMG "checked that the Credit Agreement refers to a loan . . . and the Refer-ence Entity is a corporate entity based on the legal form of the obligor stated in the Credit Agreement."  *Id.* at 5.

If compliance with the Servicing Standards were relevant to eligibility, KPMG would have needed to examine Deutsche Bank's acts as a servicer to determine the eligibility or ineligi-bility of the loans.  But KPMG's Certification does not reference the Servicing Standards at all.  This absence is clear evidence that the parties did not intend to incorporate the Servicing Standards into the Reference Obligation Eligibility Criteria.  *See In re Bernard L Madoff Invest-ment Securities LLC*, 2014 WL 5106909, at *8 (S.D.N.Y. Oct. 10, 2014) ("The Court must look to the objective manifestations of intent as gathered from the parties' words and deeds.").[4]

---

[4]    Moreover, in the provision providing that the Accountant Certification is a condition precedent to settlement, the parties also agreed to defer to the Accountant Certification: "The Notice of Ac-countant Certification . . . shall be conclusive and binding for all purposes, absent manifest error." Confirmation, § Additional Condition to Settlement, ECF No. 49-1 at 15.  The Court erred in not affording any deference to KPMG's Certification.

C.    Incorporation of the Servicing Standards into the Reference Obligation Eligibility Criteria Leads to Absurd Results that Could Not Have Been Intended By the Parties.

By interpreting the Criteria as incorporating the Servicing Standards, the Court imposed draconian consequences on Deutsche Bank in its loan servicing capacity, with the risk of forfeiture for inconsequential violations.[5]   The Court turned even the most inconsequential violations of Deutsche Bank's standard policies into potential forfeitures of millions of Euros.   This interpretation[6] is absurd and therefore must be rejected.   *See In re Lipper Holdings, LLC*, 1 A.D.3d 170, 171 (1st Dep't 2003) ("A contract should not be interpreted to produce a result that is absurd." (citations omitted)).

Consider a hypothetical: Deutsche Bank failed to follow its standard credit and collection policies and offered a non-standard adjustment to a Reference Obligor without the consent of Cart 1.   If Deutsche Bank's judgment that the adjustment would not adversely affect the determination of the losses from the perspective of the seller were later adjudicated to have been unreasonable at the time, Deutsche Bank's adjustment would have been a breach of the Servicing Standards.   And even if this breach had no relevant impact on anything, under the Court's interpretation of the Confirmation, Deutsche Bank would never be entitled to credit protection in connection with that Obligor's default under any circumstances.   Thus, even if an entirely unre-

---

[5]    As set forth herein, *infra* Section II, these draconian consequences are even more inappropriate here when the Court erred in assuming as a matter of law that Deutsche Bank breached the conflicting Servicing Standards set forth in Schedule F.

[6]    It is noteworthy that CRC did not trace out its convoluted "incorporation chain" in its May 29, 2018 letter to the Trustee regarding the disputed credit protection payments, and CRC did not bring claims under such a theory in its initial Crossclaims.   *See* Interpleader Complaint (July 5, 2018), ECF No. 1 at ¶ 24; CRC Credit Fund, Ltd.'s Answer and Cross-Claims (August 9, 2018), ECF No. 27.   It was only after reviewing the strong defenses Deutsche Bank asserted to CRC's initial Crossclaims (s*ee* Memorandum of Law in Support of Deutsche Bank AG's Motion to Dismiss CRC Credit Fund, Ltd.'s Crossclaims (September 13, 2018), ECF No. 39.), that CRC manufactured this strained reading of the Confirmation.

lated occurrence years later led to the Reference Obligor's default, Deutsche would have been unable to obtain an Accountant Certification and credit protection payments. This interpretation is more likely to lead to unwarranted forfeitures and should be rejected. *See 133 Plus 24 Sanford Ave. Realty Corp.* v. *Xiu Lan Ni*, 7 N.Y.S.3d 819, 821 (2d Dep't 2015) ("The law requires strict construction of language in written instruments that could work a forfeiture." (citation omitted)).

## II. DEUTSCHE BANK DID NOT BREACH THE SCHEDULE F SERVICING STANDARDS BY EXTENDING THE CONERGY LOANS' MATURITY TO FIVE WEEKS BEYOND CART 1'S SCHEDULED TERMINATION DATE.

Because the Reference Obligation Eligibility Criteria did not incorporate the Servicing Standards (*supra*, I), the Court need not consider any further issues to grant Deutsche Bank's motion for reconsideration. But even if compliance with the Servicing Standards was a condition precedent to Deutsche Bank's entitlement to credit protection payments, reconsideration would still be appropriate because the Court overlooked conflicting provisions within the Servicing Standards that demonstrate that Deutsche Bank did not breach these Standards.

In denying Deutsche Bank's motion to dismiss, the Court held that because the Conergy loans came due after the contractual cut-off date, the loans breached the Servicing Standards,[7] resulting in a failure to satisfy Reference Obligation Eligibility Criterion (e) and therefore an invalid Accountant Certification. Opinion at 13-15. This holding, however, overlooks key provi-

---

[7]     Referring to Deutsche Bank's motion papers, the Court found that "DB never disputes the fact that the Conergy loans breached the servicing principle set out in schedule F." Opinion at 14. This is incorrect and overlooks Deutsche Bank's denials of CRC's claim that the Conergy extensions constituted a breach. Deutsche Bank's Motion to Dismiss at 15 ("CRC's attempt to invent a breach from a harmless extension is similarly revealed as inadequate by the Transaction Documents"); *id*. n.20 (explaining that Deutsche Bank extended the Conergy loans because such extension, far from constituting a breach, "safeguard[ed] the interests of [Cart 1] in the fullest performance of the Reference Obligations" by preventing the company's bankruptcy). Deutsche Bank disputed that the Conergy loans breached the Servicing Standards for numerous reasons, including that conflicting provisions of Schedule F granted Deutsche Bank flexibility to extend the maturity date of the Conergy Loans. Deutsche Bank's litigation strategy to focus on the materiality and damages elements of CRC's breach of contract claim (Deutsche Bank Motion to Dismiss at 15-18) was not a concession that Deutsche Bank breached the Servicing Standards.

sions of the Servicing Standards.  Though avoiding extensions of Reference Obligations beyond

the Termination Date is the default *standard*, that standard is not absolute.  The Confirmation,

including specifically Schedule F, granted Deutsche Bank discretion in its service of Reference

Obligations, and it was entitled to "exercise this discretion as would a reasonable creditor in

maximizing recovery on its claims against debtors and in the protection of its own interests."

Confirmation, Sch. F, ECF No. 49-1 at 62.[8]  This discretion afforded Deutsche Bank is particu-

larly significant when circumstances create a situation in which the principles within the Servic-

ing Standards conflict.

Conergy's imminent bankruptcy in 2010 presented Deutsche Bank with a choice: either

(1) deviate from the "loan extension" servicing standard by effecting an inconsequential exten-

sion of the loans' maturity date,[9] thereby enabling a restructuring that would avoid Conergy's

bankruptcy and the Credit Event that would result therefrom; or (2) in strict adherence to the in-

consequential "loan extension" servicing standard, refuse the extension and insist that Conergy

repay according to the original schedule in the loan agreement, and thereby force Conergy to go

bankrupt.  Choice two would have caused an immediate Credit Event, which would have entitled

---

[8]     *See also* Confirmation, Sch. F, ECF No. 49-1 at 61 ("[E]ach DB Servicer shall at all times act (in the case of a syndicated loan, to the extent permissible under the relevant loan agreement) as a reasonable creditor in the protection of its own interests acting reasonably and in good faith in accordance with its general business practices taking into account the interests of Seller."); *Id.* at 62 ("In all cases of a payment rescheduling or debt restructuring, each of the DB Servicers shall adequately safeguard the interests of Seller in the fullest performance of the Reference Obligations at all times . . . .").

[9]     The extension of the loans a mere five weeks beyond the Scheduled Termination date is particularly inconsequential in light of the long implementation period of the restructuring.  Interpleader Defendant Deutsche Bank AG's Answer, Statement of Claim to the Funds, Counterclaim Against the Bank of New York Mellon London Branch and Crossclaims Against CRC Credit Fund, Ltd., ECF No. 28 (August 9, 2018) ("DB Statement of Claim"), Statement of Claim to the Funds at ¶¶ 35-43.

Deutsche Bank to credit protection payments.[10]  But this ran the risk of violating the more signif-icant servicing standard requiring that Deutsche Bank "safeguard the interests of [CART 1] in the fullest performance of the Reference Obligations."  *Id*.  Bankrupt companies are indisputably less likely to perform on their debt.  Faced with competing violations of Schedule F, Deutsche Bank "exercised reasonable discretion," as afforded by the Confirmation, accepted a haircut on the debt,[11] and chose not to force Conergy's bankruptcy.  *Id*.  This decision was consistent with Deutsche Bank's obligation to maximize recovery in "the fullest performance" of the loans, be-cause keeping Conergy afloat meant that the company could satisfy more of its debt going for-ward.  *Id*.  The Confirmation afforded Deutsche Bank significant discretion to make this deci-sion; making it was not a breach.

Indeed, under CRC's interpretation, regardless of whether Deutsche Bank chose to ex-tend the loans and keep Conergy afloat or decline to do so and let it fall into bankruptcy, Deutsche Bank would be in breach and not entitled to any protection payments.  This interpreta-tion leads to absurd results and therefore must be rejected.  CRC cannot refute that by extending the loans, Deutsche Bank postponed an immediate Credit Event that would have followed Con-ergy's bankruptcy.  Deutsche Bank effected this extension consistent with reasonable loan ser-vicing under the circumstances.

---

[10]    The Conergy loan was a syndicated loan facility (DB Statement of Claim, Statement of Claim to the Funds at ¶ 41), and the restructuring required all lender consent.  Thus if Deutsche Bank had refused, Deutsche Bank's refusal would have forced the bankruptcy of Conergy.

[11]    DB Statement of Claim, Statement of Claim to the Funds at ¶ 41. Deutsche Bank's willingness to accept a haircut rather than force a bankruptcy is further evidence that it attempted to ensure "the fullest performance" of the loans.

## <u>CONCLUSION</u>

For the foregoing reasons, Deutsche Bank's motion for reconsideration should be granted.

Dated:   September 23, 2019
New York, New York

CAHILL GORDON & REINDEL LLP

By:   /s/ David G. Januszewski
David G. Januszewski
80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Interpleader and Crossclaim Defendant Deutsche Bank AG*