UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, LONDON BRANCH, as Indenture Trustee under the Indenture dated as of April 30, 2007,<br><br>     Interpleader Plaintiff,<br><br>     -v-<br><br>CART 1, LTD., as Issuer, DEUTSCHE BANK AG FRANKFURT, as Swap Counterparty, and CRC CREDIT FUND, LTD.,<br><br>     Interpleader Defendants. | 18-CV-6093 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

  On September 9, 2019, the Court issued an Opinion and Order denying the motion of Deutsche Bank AG Frankfurt (together with its affiliates, "DB") to dismiss a breach-of-contract claim brought by CRC Credit Fund, Ltd. ("CRC"). (Dkt. No. 57.) The Court concluded that CRC had plausibly pleaded DB's violation of the terms of the Confirmation, a contract governing an underlying credit default swap. In doing so, the Court interpreted the Confirmation's Reference Obligation Eligibility Criterion (e) to incorporate all of the servicing principles in Schedule F. (Dkt. No. 57 at 14–15 (holding that "DB's violation of one servicing principle in Schedule F would render . . . loans ineligible").)

  DB has moved for reconsideration of the Opinion and Order's interpretation of Criterion (e). (Dkt. No. 59.) For the reasons that follow, DB's motion for reconsideration is granted. Familiarity with the background of this case, as set forth in the Opinion and Order, is assumed.

**I. Discussion**

  "A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol.*

1

*Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). Accordingly, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). The "major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Md.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted). The Court "has broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000).

Here, DB argues that the Court overlooked language in the Confirmation that precludes the Opinion and Order's interpretation of Criterion (e). (Dkt. No. 60 at 6.) The Court agrees.

To start, Criterion (e), which the Court discussed in its Opinion and Order, reads:

> [Each] Reference Obligation shall not be a bond but shall be a loan . . . , overdraft facility, revolving credit facility, guarantee or letter of credit . . . whose repayment is primarily dependent upon the creditworthiness of a small or medium-sized enterprise, as determined by the relevant [DB] Group Entity in accordance with the Credit and Collection Policies.

(Dkt. No. 49-1 at 45.) This language permits of two readings. The final clause of Criterion (e) may apply to the whole provision, in which case the relevant DB Group Entity is responsible for assessing whether a supposed Reference Obligation is a qualifying type of credit instrument, *e.g.*, not a bond, and whether that instrument's "repayment is primarily dependent upon the credithworthiness of a small or medium-sized enterprise." The final clause may instead apply to the penultimate clause alone, in which case the DB Group Entity is responsible for assessing

2

only the nature of the repayment.  The final clause, however, cannot charge the DB Group Entity with assessing an enterprise's "creditworthiness" without duplicating Reference Obligation Eligibility Criterion (a).  *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("In interpreting a contract under New York law, . . . the contract should be construed so as to give full meaning and effect to all of its provisions." (internal quotation marks and citation omitted)).  Criterion (a), a provision that the Court did not discuss in its Opinion and Order, unambiguously speaks to creditworthiness and requires the enterprises referenced in Criterion (e) to have "a [DB] Internal Rating of 'iB-' or better."  (Dkt. No. 49-1 at 45.)

As DB argues, either possible reading of Criterion (e) "describes the types of credit instruments that were eligible for inclusion in the Reference Portfolio" and "has nothing to do with the conditions for servicing such obligations."  (Dkt. No. 60 at 6.)  In other words, Criterion (e) instructs the relevant DB Group Entity to follow the Credit and Collection Policies insofar as they pertain to assessing types of credit instruments; Criterion (e) does not require the DB Group Entity to check for compliance with whatever servicing principles may be included in the Credit and Collection Policies.  DB's construction of Criterion (e) is supported by the structure of the Reference Obligation Eligibility Criteria, which outline what a Reference Obligation "shall be" and "shall not be" but are silent on how Reference Obligations may be handled.  (Dkt. No. 49-1 at 45.)  The Reference Obligation Eligibility Criteria nowhere suggest that a Reference Obligation may cease qualifying as such, should DB service it improperly.  One would expect this putative criterion to be explicitly stated, rather than implied by the final clause of Criterion (e) — which neither addresses how Reference Obligations are to be serviced nor references Schedule F.  *Lui v. Park Ridge at Terryville Ass'n, Inc.*, 196 A.D.2d 579, 581 (2d Dep't 1993) ("A court should not, under the guise of contract interpretation, imply a term which the parties

themselves failed to insert or otherwise rewrite the contract." (internal quotation marks and citations omitted)).

Instead of referencing Schedule F, Criterion (e) refers to the Credit and Collection Policies, which the Confirmation defines as "the standard credit and collection policies of [DB] as amended or supplemented from time to time in accordance with the Servicing Standards" set forth in Schedule F. (Dkt. No. 49-1 at 7.) By its plain text, this definition distinguishes between DB's standard credit and collection policies and the Servicing Standards. The servicing principles bear on the Credit and Collection Policies "from time to time," not as a default. Schedule F is incorporated into the Credit and Collection Policies only insofar as one of its sections, which the Opinion and Order did not analyze, directly addresses the mechanism through which the parties may "amend or supplement the Credit and Collection Policies." (Dkt. No. 49-1 at 61.)

That the Credit and Collection Policies do not incorporate Schedule F in full is evident also from the servicing principles that CRC alleges DB violated. In Schedule F's section entitled "Payments in Arrears from Reference Obligors," the Confirmation explains that any debt restructuring will occur "[i]n accordance with the Credit and Collection Policies *and subject to the following three paragraphs*" of Schedule F. (Dkt. No. 49-1 at 62 (emphasis added).) In one of the following three paragraphs, Schedule F states that DB "shall only agree to . . . debt restructuring . . . if the Reference Obligation, under the altered repayment schedule or as restructured, is due to be repaid in full before the Schedule Termination Date." (*Id*.) This is the limitation that DB allegedly violated. As Schedule F indicates, this limitation is separate from and in addition to any limitations in the Credit and Collection Policies. It follows that, even if Criterion (e) incorporated the Credit and Collection Policies in full, it would not incorporate the

provision of Schedule F that CRC alleges DB violated.  The chain of incorporation adopted in the Opinion and Order cannot withstand review.

Contrary to CRC's suggestion, this interpretation of the Confirmation does not insulate DB from consequences, should it "rampantly violate[] the Servicing Standards, and . . . collect a windfall at the Noteholders' expense."  (Dkt. No. 66 at 12.)  Large-scale or particularly consequential violations of Schedule F could rise to the level of material breach and disentitle DB to default protection payments.  *See Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016) ("Whether a failure to perform constitutes a 'material breach' turns on . . . the absolute and relative magnitude of default, its effect on the contract's purpose, willfulness, and the degree to which the injured party has benefitted under the contract." (citing *Hadden v. Consol. Edison Co. of N.Y.*, 34 N.Y.2d 88, 96 (1974)).  It cannot be the case, however, that a Reference Obligation should cease being treated as such, and DB must forgo its default protection payments, whenever DB does not comply with *any* provision of Schedule F.  Schedule F sets forth not only high-level servicing principles but also minutiae about how the Reference Obligations must be treated.  If Criterion (e) incorporated Schedule F in full, DB would forfeit millions of Euros if it failed to update its accounting records for one month and a day, in contravention of Schedule F's clear demand that the "records . . . shall not fall behind for more than 30 calendar days."  (Dkt. No. 49-1 at 6–7.)  This would be "absurd, commercially unreasonable or contrary to the reasonable expectations of the parties," and the Court retracts its earlier interpretation of the Confirmation that enables such a result.  *Greenwich Capital Fin. Products, Inc. v. Negrin*, 903 N.Y.S.2d 346, 415 (1st Dep't 2010) (citing *Matter of Lipper Holdings v. Trident Holdings*, 1 A.D.3d 170, 171 (1st Dep't 2003)).

5

## II. Conclusion

For the foregoing reasons, DB's motion for reconsideration is GRANTED, and the Opinion and Order is vacated insofar as it denies DB's motion to dismiss CRC's breach-of-contract claim.

The Clerk of Court is directed to close the motion at Docket Number 59.

SO ORDERED.

Dated: November 30, 2020
New York, New York

_____
J. PAUL OETKEN
United States District Judge